AtkiNSON, J.,
delivered the opinion of the court:
• The claimant herein, who, at the time the services were rendered for which he brings this suit, was a captain in the United States Revenue-Cutter Service, and was detached from his vessel December 4, 1907, by an order issued by the Secretary of the Treasury, which directed him to proceed to Europe to investigate and report upon certain trade relations in the industrial centers of Great Britain and the Continent. Pursuant to these orders he sailed from the United States January 21, 1908. Pie arrived at Berlin, Germany, January *174 29, where he established headquarters and entered upon his investigations pursuant to the instructions of the Secretary of the Treasury. Upon the completion of his work in Germany on March 31, he proceeded to Zurich, Switzerland, where he continued his investigations until May 26. From this point he went to Milan, Italy; thence to Paris, and then to London, finally returning to the United States on or about August 26 of that year.
While absent upon this special duty the claimant was his own disbursing officer, all of his expenses, including subsistence, quarters, travel, stenographic, and office charges, being paid by the United States upon properly approved vouchers furnished by him to the Treasury Department.
As such disbursing officer the claimant transmitted from Milan, Italy, under date of May 1, 1908, to the Secretary of the Treasury a voucher for-$98.19, being 10 per cent increase upon his yearly pay of $3,500 for the period from January 21, 1908, the date he sailed from New York,'to April 30, 1908, both inclusive, which allowance he claimed as an officer on foreign service beyond the States and Territories of the Republic.
This claim for extra pay was referred by the Secretary of the Treasury to the Comptroller of the Treasury, who decided that its payment was not authorized, because the claimant’s orders did not contemplate service at a foreign station within the meaning of the law, but it was intended only that he should travel from place to place carrying out the instructions of the department in the discharge of his duties on the special mission for which he had been detailed. In accordance with this ruling, payment was refused and this suit was brought to recover the same.
The law increasing the pay of military officers for foreign service is the act of June 30, 1902 (32 Stats., 512), which provides:
. “ For additional ten per centum increase on pay of commissioned officers serving at foreign stations, four hundred and fifty-one thousand four hundred and fifty-six dollars: Provided, That hereafter the pay proper of all commissioned officers and enlisted men serving beyond the limits of the States comprising the Union and the Territories of the United *175 States contiguous thereto shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto.”
Section 3 of the act of April 12,1902 (32 Stats., 100), provides that commissioned officers of the Eevenue-Cutter Service shall receive the same pay as was then or should thereafter be provided by law for officers of the army of corresponding rank. The only question, therefore, to be determined in this case is whether the claimant was serving at a foreign station within the meaning of the act of June 30, 1902 (supra), during the period for which he claims extra pay.
Claimant’s attorney admits that if this demand for 10 per cent increase of pay had been presented for payment out of the funds appropriated by the act of June 30, 1902, the Treasury Department might have been warranted in requiring claimant to show service at a foreign station in consonance with the language of that appropriation statute; but inasmuch as the claim was presented for payment out of the funds appropriated by the act of March 2, 1907, hereinafter quoted, which makes no mention of foreign stations, a refusal to pay can not be justified. In other words, his contention is that the restriction of the appropriation clause in the act of 1902 has no application to the proviso attached thereto embodying the permanent law.
We do not agree with this contention. The court in' the case of Lafitte v. United States (43 C. Cls. R., 166) decided that a proviso to an appropriation which will permanently affect the pay of officers irrespective of the appropriation to which it is attached is not properly a proviso and has simply the meaning of the conjunction “ and.” In construing such an appropriation, it is the duty of the court to give attention to all the language of the paragraph. The court further said, “ Thus, taking the whole paragraph together, only such officers are to receive the extra pay as are actually stationed either in some foreign countries or in some of our outlying-possessions.”
*176 But claimant’s counsel relies chiefly upon the act of March 2, 1907 (34 Stats., 1164), which makes no mention of foreign stations, and to that extent, he argues, it operates as a repeal of the act of 1902. Its language is as follows:
“ For additional ten per centum increase on pay of oíñcers serving beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto (except Porto Rico and Hawaii), as provided by act approved June thirtieth, nineteen hundred and two, the time of such service to be counted from the date of departure from said States to the date of return thereto, two hundred and ten thousand dollars.”
We can not see that the claimant’s rights of recovery are any greater under this appropriation act than they are under the act of 1902, for the reason that the additional pay therein authorized is expressly declared to be “ as provided by the act approved June thirtieth, nineteen hundred and two,” which distinctly required service at a foreign station. Hence it is apparent that the latter act is not intended to operate as a repeal of the former only in so far as it applies to Porto Pico and Hawaii. Therefore, construing these statutes together, it is evident that an officer in the military service of the Government, in order to recover 10 per cent increase of salary, must serve at a foreign station other than Porto Rico and the Hawaiian Islands.
But it is also contended that the services rendered by claimant were at foreign stations within the meaning and intent of the statutes we have quoted. It is true that he was detached from duty as commander of a revenue-cutter vessel and was sent to Europe by command of the Secretary “of the Treasury to perform a service entirely independent of his .regular employment; that his commission necessarily required him to travel from place to place; that he opened headquarters and offices in various cities; that he remained but a short space of time at any particular place, and whatever travel he performed was in going to and from such cities as suited his purposes and convenience best, all incidental expenses connected therewith having been paid by the Government. In view of these facts, can it be consistently claimed that the Congress intended by the acts we have quoted that such *177 service by a military official was to be classed as “ serving at foreign stations? ” We think not.
It is clear that the extra allowance provided by these statutes was intended by the Congress to apply to such officers only who may be regularly assigned to foreign posts or stations, as a compensation in part, at least, for the sacrifices and hardships they are required to endure going to, while at, and coming from such assignments, and can not, therefore, be construed to apply to officers assigned to investigate facts pertaining to the manufacturing industries of the Government, however valuable such facts might prove to be to the nation or to its individual citizens. Certainly no hardships or particular dangers are connected with such a mission, and consequently no increase of salary should be allowed therefor, especially when all necessary expenses of such employment were paid to claimant out of the Treasury of the United States. (United States v. Thomas, 195 U. S., 423.)
For the reasons given, we decide that the claim in this case does not come within the letter or spirit of the statutes relied upon; consequently the petition is dismissed.
Judgment for the United States.